UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNY ROBERSON,                          CASE NO. 19-10285

       *Plaintiff*,                        HON. MARK A. GOLDSMITH
*v.*                                     DISTRICT JUDGE

WYNKOOP,                                 HON. PATRICIA T. MORRIS
                                         MAGISTRATE JUDGE
       *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 22, 26, and 28)

### I.    RECOMMENDATION

Plaintiff Danny Roberson brings this § 1983 action alleging that Defendant violated his rights under the Fourth Amendment to the U.S. Constitution. Specifically, Plaintiff argues his determination of probable cause occurred more than 48 hours after his warrantless arrest. The parties have briefed their motions (ECF Nos. 22, 26, and 28), and the case is ready for Report and Recommendation. For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiff's motions, (ECF Nos. 26 and 28)[1], and Defendant's motion (ECF No. 22) be **DENIED**.

### II.    REPORT

#### A.    Introduction and Procedural History

The facts of this case are not in dispute and they focus on the precise events surrounding Plaintiff's arrest. On October 4, 2016, Defendant responded to a domestic

---

[1] It appears that ECF Nos. 26 and 28 are substantially the same documents.

violence call at a residence in Buena Vista Township. (ECF No. 22-2, PageID.119.) After ascertaining probable cause and a search warrant, Defendant seized drugs, a weapon, and ammunition at the residence. (*Id.*) Plaintiff was arrested, without a warrant, on drugs and weapons charges, and he was lodged in the Saginaw County Jail early on October 5, 2016. (*Id.* at 120.) Defendant's incident report was completed early October 5. (*Id.*) The prosecuting attorney authorized a warrant on October 6. (*Id.* at 121.) The judge did not approve the warrant until October 7. (*Id.*) Defendant "do[es] not have any personal knowledge why the warrant was not issued by the judge until approximately 60 hours after [Plaintiff's] arrest." (*Id.*) Defendant further states "In this case, like all other cases, I was relying on the court officer, prosecutor's office and jailers to get the arrest warrant request for [Plaintiff] promptly processed." (*Id.* at 122.)

**B.    Summary Judgment Standard**

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists. Fed. R. Civ. P. 56(a). In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at

587-88. Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not . . . 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### C.    Arguments and Analysis

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or law of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).

Defendant argues that he is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (1999) (quotation marks omitted). Further,

4

Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.

Because qualified immunity is an immunity from suit rather than a mere defense to liability[,] it is effectively lost if a case is erroneously permitted to go to trial. Indeed, we have made clear that the driving force behind the creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery. Accordingly, we repeatedly have stressed the importance of resolving immunity questions at the earliest stage in litigation.

*Id.* at 231–32 (citations and quotation marks omitted).

"If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The *Saucier* Court laid out a two-step process[2] for determining whether an official may claim qualified immunity: first, "Taken in the light most favorable to the party asserting the injury, do the facts show the officer's conduct violated a constitutional right?"; and second, "the next . . . step is to ask whether the right was clearly established." *Id.* at 201. The inquiry into whether the right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition; and it serves to advance understanding of the law . . . ." *Id.* The right at issue must be clearly established "in a more particularized, and hence more relevant sense: The contours

---

[2] The two-step approach articulated in *Saucier* was later held to be not rigidly required. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("On reconsidering the procedure required in *Saucier,* we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.")

of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Plaintiff claims his Fourth Amendment right to a prompt judicial determination of probable cause was violated, and Plaintiff also cites a corresponding violation of Michigan statute on the subject. To the extent that Plaintiff is arguing that Defendant violated Mich. Comp. Laws § 764.13, violation of a state statute does not give rise to a § 1983 claim. *See Rayfield v. City of Grand Rapids*, 768 F. App'x 495, 507 (2019) (citing *Harrill v. Blount Co.*, 55 F.3d 1123, 1125 (6th Cir. 1995) ("The violation of a right created and recognized only under state law is not actionable under § 1983.")).

In *Gerstein v. Pugh*, 420 U.S. 103 (1975), the U.S. Supreme Court held "that the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest." *Riverside Co. v. McLaughlin*, 500 U.S. 44, 47 (1991). Under *Riverside Co.*, the Supreme Court held "that a jurisdiction that provides judicial determination of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *Id.* at 56. If an arrested individual does not receive a hearing within that timeframe, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id.* at 57.

Since it is undisputed that Plaintiff was not provided with a probable cause determination within 48 hours after having been arrested without a warrant, Defendant bears the burden to proffer emergency or other extraordinary circumstances justifying the delay. Here, Defendant proffers the current processes used: once Defendant's arrest report

6

was completed and approved, his duties ended and the task of obtaining a probable cause determination was in the hands of others, such as the assistant prosecutor, court officer, jailers, or others unknown to Defendant. (ECF No. 22, PageID.101.) Defendant further argues that extraordinary circumstances existed because "[w]hat began as a 'routine' domestic violence dispatch turned into a significant investigation" where Defendant spent four hours on the scene, seized guns, ammunition, and cocaine, prepared his lengthy report, prepared a warrant request, all by early morning October 6, 2016. (*Id.* at PageID.110–11.) Defendant "then relied on MSP's established practice of having the court officer obtain authorization from the prosecutor and to swear the complaint in front of a judge for issuance of a warrant." (*Id.* at PageID.111.) Defendant "does not know what happened on the day of October 6, 2016 after he left the warrant request for the court officer. This investigation was an extraordinary circumstance and Wynkoop did not unreasonably delay in seeking the warrant." (*Id.*) Defendant further argues that "even if this does not equate to an 'extraordinary circumstance', Wynkoop did everything by the book and is still entitled to qualified immunity." (*Id.* at PageID.112.)

Courts look to state law to determine who is responsible for securing a warrantless arrestee's probable cause determination. *Drogosch v. Metcalf*, 557 F.3d 372, 378–79 (6th Cir. 2009). Mich. Comp. Laws § 764.13 states "A peace officer who has arrested a person for an offense without a warrant shall without unnecessary delay take the person arrested before a magistrate of the judicial district in which the offense is charged to have been committed, and shall present to the magistrate a complaint stating the charge against the person arrested."

Although the court sympathizes with this Defendant officer who has completed what he believes to be his portion of the process, case law has held that, under Michigan law, the arresting officer is responsible for securing an arrestee's probable cause determination. *Drogosch*, 557 F.3d at 378–79 (applying Mich. Comp. Laws § 764.13 and concluding that "as a 'peace officer who . . . arrested a person . . . without a warrant'" it was the arresting officer's duty to timely bring the arrestee before a magistrate) (citations omitted)[3]; *accord Price v. O-Donnell*, 2019 WL 5290809, at *2 (E.D. Mich. Sept. 27, 2019) ("Under Michigan law, the person responsible [for assuring a probable cause determination is made within 48 hours of arrest] is the arresting officer."); *Spain v. St. Joseph County Jail*, 2016 WL 1296026, at *4 (W.D. Mich. Feb. 11, 2016) (denying summary judgment and finding a genuine issue of material fact where officer claimed to be one of the officers that went to defendant's house but was not the arresting officer); *see also Cherrington v. Skeeter*, 344 F.3d 631, 644–45 (6th Cir 2003) (duty generally falls to the arresting officer to bring the arrested person without unreasonable delay to the court for a probable cause hearing under Ohio law virtually identical to the corresponding Michigan law); *Cain v. Carroll*, 2017 WL 4863194, at *2 (6th Cir. Oct. 5, 2017) (reversing grant of summary judgment in favor of arresting officer where issue of fact existed as to whether a probable cause determination occurred within 48 hours of the plaintiff's arrest, noting that if not

---

[3] Jailers do not appear to have any duty to ensure the person arrested without a warrant has a timely probable cause determination. *Caddell v. Campbell*, 2020 WL 70395, at *9 (S.D. Ohio, Feb. 12, 2020), citing *Leschorn v. Fitzgerald*, 1998 WL 69036 (6th Cir. Feb. 9, 1998).

concluded within 48 hours, the burden would have shifted to defendant to show an emergency or extraordinary circumstance).[4]

Defendant has not shown that there is no genuine issue of material fact showing his entitlement to summary judgment. Accordingly, I suggest that a genuine issue of material fact exists as to whether extraordinary circumstances existed to excuse Defendant's failure to secure for Plaintiff a probable cause determination within 48 hours of his warrantless arrest.

Plaintiff also moves for summary judgment (ECF Nos. 26 and 28), and generally reasserts the same arguments presented in his response to Defendant's motion regarding search-and-seizure issues that are not a part of the instant complaint. In addition, for the reasons stated above, a genuine issue of material fact exists, precluding summary judgment for either party.

### D.    Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that Plaintiff's motions (ECF Nos. 26 and 28) and Defendant's motion (ECF No. 22) be **DENIED**.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file

---

[4] Compare, *Rayfield*, 768 F. App'x at 509–10 ("Although we have recognized that, per *County of Riverside*, officers are on notice that defendants have a right to a probable cause hearing within 48 hours, *Cherrington*, 344 F.3d at 644, *Cherrington* does not deal with the factually and legally distinct situation presented by Rayfield's case, namely where two municipalities, both of which have authority to process a detainee, jointly manage the custody of a pre-hearing detainee."). No such battle of the jurisdictions occurred here.

specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  December 15, 2020                    S/ PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge

10